# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**TEKESHA L. EDWARDS**                                                                     **PLAINTIFF**

**v.**                                                                        **CIVIL ACTION NO. 1:22-cv-130-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                                **DEFENDANT**

## ORDER

This case arises from Plaintiff's application for SSI in April 2015 due to migraines, fainting spells, right shoulder pain, herniated discs, obesity, thrombocytosis, bronchitis, and hemolytic anemias. Following this Court's remand of a prior ALJ decision, an ALJ held an administrative hearing in June 2020 and issued a partially favorable decision on June 25, 2020. On July 13, 2022, the Appeals Council declined to assume jurisdiction, making the ALJ's June 25, 2020, decision final and subject to this review under 42 U.S.C. § 405(g).[1]

---

[1] The Court's review of the Commissioner's final decision is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

In his June 25, 2020, decision, the ALJ found that Plaintiff was not disabled for purposes of the Social Security Act from April 13, 2015, Plaintiff's application date, up until June 16, 2020, but became disabled on that date. When making this determination, the ALJ found at step one that Plaintiff had not engaged in SGA since April 13, 2015, her application date. The ALJ found at step two that Plaintiff had severe impairments, including migraine headaches, but that these impairments did not meet or equal a Listing at Step three. The ALJ next determined Plaintiff had the RFC to perform sedentary work with the following restrictions: she could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, and crouch; never crawl; frequently finger and handle; frequently reach in all directions; must avoid unprotected hazards and hazardous moving machinery; occasionally drive and work around vibration; and must avoid exposure to temperature extremes, humidity, and working in direct sunlight.

At step four, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ found based on VE testimony that Plaintiff could perform other jobs existing in significant numbers in the national economy. The ALJ then found that on June 16, 2020, Plaintiff's age category changed, and she therefore became disabled as of that date.

As presented by the claimant, the issues on this appeal are whether the ALJ (1) erred in his assessment of the opinions of Dr. Whitecar; (2) failed to take into consideration Ms. Edwards' allegations of pain especially from her migraines; (3) failed to evaluate Dr. Kenny Edwards' sedentary restrictions on September 30, 2015; (4) failed to honor the requirements of the federal court judgment; and (5) erred in failing to evaluate Ms. Edwards under SSR 19-4P.[2]

---

[2] Plaintiff also points out that the ALJ misstated Plaintiff's weight. *See* Tr. at 640 (stating Plaintiff's weight as 649 pounds with a BMI of 54.94). But as Plaintiff acknowledges, this appears to be a typographical error. *See* Tr. at 640, 1029 (recording Plaintiff's weight as 349.5 pounds with a BMI of 54.94). Accordingly, Plaintiff fails to show any harmful error.

## A. Did The ALJ Properly Consider Dr. Whitecar's Opinions?

In particular, and as the Commissioner notes, in December 2018, Dr. Whitecar stated that Plaintiff had essential thrombocytosis, had a good prognosis, and she required frequent lab work, but her impairment did not hinder her ability to work or carry out activities of daily living. Then, in April 2020, Dr. Whitecar stated that Plaintiff was unable to work due to essential thrombocytosis and migraine headaches.

The plaintiff argues first that neither of these is a medical opinion, and the court agrees – but only insofar as either may attempt to opine on Plaintiff's disability status. Specifically, the court finds the ALJ did not err in accessing the December 2018 statement as a medical opinion nor in assigning significant weight to the December 2018 opinion insofar as it provided that Plaintiff's prognosis was good and that her impairment did not hinder her ability to perform activities of daily living. I also find that the ALJ correctly gave no weight to the 2018 or 2020 opinions as concerned Plaintiff's ability to work, correctly noting instead, that assessment was exclusively the Commissioner's to make. 20 C.F.R. § 416.927(d). Further Plaintiff maintains the ALJ should have re-contacted Dr. Whitecar to clarify what Plaintiff characterizes as competing statements. However, the Commissioner argued the ALJ had sufficient medical evidence to determine Plaintiff's claim citing, convincingly, in support that:

> First, the ALJ found Plaintiff's migraine headaches to be severe. Tr. 651. Next, the ALJ adequately accounted for Plaintiff's headaches in the RFC by restricting her to avoiding unprotected hazards and hazardous moving machinery, only occasionally driving and work around vibration, and avoiding exposure to temperature extremes, humidity, and working in direct sunlight. Tr. 652. The medical record supports these restrictions.
>
> Exam notes during the relevant period show Plaintiff had no nerve or sensory deficits, no weakness, and normal coordination. Tr. 652-654; Tr.-2 59, 107, 340, 486. In addition, radiographic exams of Plaintiff's head were normal. Tr. 639-641, 1051, 1478-1480, 1595-1596. And records show Plaintiff's migraines were exacerbated by exposure to light, which the ALJ accounted for in the RFC. Tr.-2 4, 122, 286.

The undersigned further notes the ALJ specifically recounted in his decision that:

> The claimant's primary complaints involved alleged migraine headaches, which she reports daily occurrence of. She also reports associated nausea, dizziness and blurred vision at times but hospital examinations and neurology records consistently reflected no deficits and overall normal examinations (Exhibits B8F, B10F, B12F, B13F, B14F, B16F and B17F). Generally, assessed without aura, without status migrainous and not intractable. In addition, MRI of the head and brain have consistently been normal.

In short, the ALJ had no need to re-contact Dr. Whitecar. *See White v. Soc. Sec. Admin.*, 129 Fed. Appx. 905, 906 (5th Cir. 2005) ("[T]he record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony.").

### B. Did the ALJ Fully Consider Plaintiff's Migraine Headaches?

On this issue, I find that there has been no showing that the ALJ did not do so. First, the ALJ found Plaintiff's migraines headaches to be severe, and the ALJ adequately accounted for them in the RFC by restricting Plaintiff to avoiding unprotected hazards and hazardous moving machinery, only occasionally driving and work around vibration, and avoiding exposure to temperature extremes, humidity, and working in direct sunlight. The medical record supports these restrictions. As noted previously, the ALJ also pointed out that exam notes during the relevant period show Plaintiff had no nerve or sensory deficits, no weakness, and normal coordination, and normal radiographic exams of Plaintiff's head and, in general, no intractable headaches.

### C. Did the ALJ fail to evaluate Dr. Kenney Edwards' September 30, 2015, sedentary restrictions?

On September 30, 2015, Dr. Kenny Edwards indicated he was going to raise Plaintiff's lifting restrictions to 15 pounds with no repetitive work at or above the shoulder height with lifting, reaching, and pulling two weeks after surgery. While the plaintiff correctly notes that the ALJ did not address this statement, the Commissioner argues that Plaintiff fails to show any

harmful error in as much as the restrictions are not materially in conflict the ALJ's RFC restricting Plaintiff to sedentary work with frequent reaching. *See Russo v. Saul*, 805 Fed.Appx. 269, 273 (5th Cir. 2020) (to establish prejudice, plaintiff must show error might have altered result; plaintiff did not show import of omitted records or how they would somehow swing the evidentiary pendulum in her favor). I find that in the instant case Plaintiff has failed to demonstrate any harmful error.

### D.  Did the ALJ fail to honor the requirements of the federal court judgment?

I find that, on the contrary, the record demonstrates compliance. Far from failing to obtain any additional medical records documenting Plaintiff's migraine headaches, the transcript contains medical records after this Court's April 2019 remand. Moreover, Plaintiff's representative at the hearing was not aware of any outstanding medical records not already in evidence before the ALJ. Tr. 669-670. Also, Plaintiff points to no records the ALJ was unable to consider.

### E.  Did the ALJ err in failing to evaluate Ms. Edwards under SSR 19-4P?

While I find the ALJ did not expressly mention SSR 19-4P, which guides adjudicators on how to assess if a claimant's headache disorder is a medically determinable impairment and states that adjudicators must consider and discuss a claimant's limitations in the RFC, it is equally accurate that Plaintiff does not show how the ALJ's analysis of Plaintiff's migraines deviates from SSR 19-4p's guidance. Therefore, plaintiff shows no harmful error. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (plaintiff must show substantial right was affected; major policy underlying harmless error rule is to preserve judgments and avoid waste of time).

### Conclusion

In conclusion I find that the ALJ's decision is supported by substantial evidence and there

has been no showing of prejudicial error. For the reasons stated above, the ALJ's June 25, 2020, decision is affirmed.

SO ORDERED, this the 9th day of August 2023.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**